IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TRACIE BECKETT § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | NO. 3-09-CV-1058-BD |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tracie Beckett seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

I.

Plaintiff alleges that she is disabled due to a variety of ailments, including chronic pain throughout her body, hepatitis, asthma, internal inflamation, and psychiatric problems. After her application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on July 24, 2007. At the time of the hearing, plaintiff was 44 years old. She has a high school equivalency diploma and no past relevant work experience. Plaintiff has not engaged in substantial gainful activity since August 10, 2005.

The ALJ found that plaintiff was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that plaintiff suffered from asthma, degenerative disc disease, a personality disorder, an anxiety disorder, depression, and substance abuse, the judge

concluded that the severity of those impairments met the requirements of the applicable listings only because of her substance abuse. If plaintiff stopped using drugs, the ALJ determined that the severity of her impairments did not meet or equal any impairment listed in the social security regulations. The judge also found that plaintiff had the residual functional capacity to perform a limited range of light work. Relying on the testimony of a vocational expert, the ALJ determined that plaintiff was capable of working as a toll collector, a sorter, and a cutter -- jobs that exist in significant numbers in the national economy. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In three grounds for relief, plaintiff contends that: (1) the ALJ erroneously found that her substance abuse was a contributing factor material to the determination of disability; (2) the ALJ improperly rejected the opinions of her treating physician; and (3) the assessment of her residual functional capacity is not supported by substantial evidence.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize

the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct.

2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant shows that her substantive rights were prejudiced. *Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

The court first considers whether plaintiff's substance abuse was a contributing factor material to her disability. In 1996, Congress passed the Contract with America Advancement Act ("CAAA"), Pub.L. No. 104-121, 110 Stat. 847 (1996), which provides, in pertinent part:

> [A]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

42 U.S.C. § 1382c(a)(3)(J). Under regulations implementing this legislation, the Commissioner must ascertain whether drug or alcohol addiction is "a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). The key factor in making this determination "is whether we would still find you disabled if you stopped using drugs or alcohol." *Id.* § 404.1535(b)(1). If a claimant's remaining limitations would not be disabling, drug addiction or alcoholism is considered to be "a contributing factor material to the determination of disability." *Id.* § 404.1535(b)(2)(i). The claimant bears the burden of proving that his or her remaining limitations are disabling independent of drug or alcohol abuse. *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

The CAAA regulations apply only if there is medical evidence of current drug or alcohol abuse. *See id.* at 499 (analysis under CAAA regulations is appropriate "assuming that [plaintiff] is still addicted to drugs and alcohol at the time of [the] hearing"). Such is the case here. In August 2005, plaintiff was released from prison after serving four years on a parole violation for a drug-related offense. (*See id.* at 269). Following her release, plaintiff participated in an intensive out-patient substance abuse treatment program that lasted approximately six months. (*Id.*). She remained sober through May 2006. (*Id.*). However, in November 2006, plaintiff attempted to obtain early refills on prescriptions for Clonazepam and Tanazapam[1] which, according to the testifying medical expert, is indicative of substance abuse. (*Id.* at 522, 523, 794). On July 23, 2007 -- the day before the administrative hearing -- plaintiff tested positive for cocaine. (*Id.* at 651). Plaintiff also smoked "crack" twice in August 2007. (*Id.* at 725, 748). This constitutes substantial evidence that plaintiff abused drugs during the time period relevant to her disability determination.

---

[1] Clonazepam and Tanazapam are prescription medications used to treat anxiety.

Although the medical evidence established that plaintiff suffered from a variety of mental impairments, the ALJ found that the severity of those impairments met the requirements of the applicable listings only when plaintiff used drugs. (*See id.* at 18-20). According to the ALJ:

> [P]rison records reflect no active mental health symptomology. As the claimant exhibited no active mental health symptomology during a period of presumed abstinence, and often exhibited only mild to moderate symptomology following her release from prison, the undersigned is convinced with sustained sobriety the claimant could be expected to meet the demands of competitive simple work, as long as she was not required to interact with others on more than an incidental basis. This determination is consistent with treatment notes that show during the time period relevant to this decision the claimant has been assessed with social, occupational, and psychological [sic] (Global Assessment of Functioning or GAF) as high as 60, which is indicative of mild to moderate limitations. It is also consistent with the claimant's reported symptomology, which on a scale of zero to ten with zero being no symptoms and ten being extreme symptoms has quite frequently been rated as five or less.

(*Id.* at 23-24) (internal citations omitted). Those findings are also supported by substantial evidence. The record shows that plaintiff was not diagnosed with depression until September 2005. (*Id.* at 248). It was later determined that plaintiff suffered from post-traumatic stress syndrome and antisocial personality disorder. (*Id.* at 272, 526, 530, 534, 597, 598). In a mental impairment questionnaire dated July 31, 2007, Dr. Scott Kemp opined that plaintiff's mental limitations caused her to have "no useful ability" to deal with stress, interact appropriately with the general public, maintain socially acceptable behavior, or adhere to basic standards of neatness and cleanliness. (*See id.* at 638). Dr. Kemp found that plaintiff lacked the mental ability to meet competitive standards with respect to a variety of work-related tasks, including: (1) carrying out very short and simple instructions; (2) maintaining attention for longer than two hours; (3) sustaining an ordinary routine without special supervision; (4) working in coordination with or proximity to others without being unduly distracted; (5) making simple work-related decisions; (6) asking simple questions or

requesting assistance; (7) responding appropriately to criticism from a supervisor; and (8) getting along with co-workers or peers. (*Id.* at 637-38).[2] However, as previously discussed, plaintiff tested positive for cocaine on July 23, 2007 -- just eight days before Dr. Kemp completed the mental impairment questionnaire. Plaintiff also admitted to smoking "crack" twice in August 2007. When plaintiff was incarcerated and unable to obtain drugs, she had no diagnosis of any mental impairments. (*See id.* at 178, 182, 184, 186, 195, 199, 201, 205, 207, 372, 373). Nor is there anything in the record to suggest that plaintiff suffered any work-related limitations or was disabled during this period of forced sobriety. In view of the evidence that plaintiff had no disabling mental impairments when she was not using drugs, the ALJ did not err in making such a finding.

Plaintiff also faults the ALJ for not asking Dr. Kemp to clarify the record regarding any chronic substance abuse and for not inquiring about the results of drug testing while she was on parole. (*See* Plf. MSJ Br. at 18-19). Both arguments are without merit. An ALJ is required to recontact a medical source "[w]hen the evidence . . . from [the] treating physician or psychologist or other medical source is inadequate for [the Commissioner] to determine whether [the claimant is] disabled." *Cornett v. Astrue*, 261 Fed.Appx. 644, 648, 2008 WL 58822 at *3 (5th Cir. Jan. 3, 2008), *quoting* 20 C.F.R. § 416.912(e). In this case, there is no indication that the ALJ found the evidence inconclusive or inadequate to render a decision. Nor is there any evidence that Dr. Kemp would have provided additional information helpful to plaintiff. Similarly, plaintiff does not proffer the results of any parole drug testing or otherwise show that these test results would have changed the outcome of her disability determination. Without such evidence, there is no basis for a remand.

---

[2] Notwithstanding these serious limitations, Dr. Kemp determined that plaintiff was not precluded from understanding and remembering very short and simple instructions, maintaining regular attendance and being punctual within customary tolerances, and completing a normal workday and workweek without interruption from psychologically based symptoms. (*See* Tr. at 637).

*See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (remand required only if claimant shows prejudice resulting from ALJ's failure to request additional information).

C.

Next, plaintiff argues that the ALJ improperly rejected Dr. Kemp's opinion that her mental impairments caused "marked" limitations in the ability to maintain social functioning, concentration, persistence, and pace, and "moderate" restrictions in activities of daily living. (*See* Tr. at 636). The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even if a treating source opinion is not given controlling weight, it still is entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188 at *4 (SSA Jul. 2, 1996); *see also Newton*, 209 F.3d at 456. These factors require consideration of:

1. the physician's length of treatment of the claimant;

2. the physician's frequency of examination;

3. the nature and extent of the treatment relationship;

4. the support of the physician's opinion afforded by the medical evidence of record;

5. the consistency of the opinion with the record as a whole; and

6. the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2). A treating source opinion cannot be rejected absent good cause for reasons clearly articulated in the hearing decision. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir.

2001). More specifically, the ALJ must clearly articulate the weight given to the treating source opinion:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 at *4-5.

The ALJ found that if plaintiff stopped using drugs, she would be able to perform simple work, so long as her interaction with supervisors, coworkers and the public was limited to no more than an occasional basis. (*See* Tr. at 21, 23). In a well-reasoned decision, the judge explained that she rejected Dr. Kemp's assessment because it "does not address the impact of substance abuse." (*Id.* at 23). Indeed, it appears that Dr. Kemp was unaware of plaintiff's ongoing drug use, as evidenced by his notation on the mental health questionnaire that plaintiff "has been sober for four years." (*See id.* at 639). As previously discussed, plaintiff tested positive for cocaine just eight days before Dr. Kemp completed the questionnaire, and admitted to smoking "crack" at least two times in the following weeks. Dr. Kemp's failure to address the impact of plaintiff's substance abuse on her mental impairments constitutes "good cause" for giving his opinions limited or no credence. *See Smith v. Astrue*, No. 07-51161, 2008 WL 2325637 at *3 (5th Cir. Jun. 6, 2008) (where record established that plaintiff's drug use continued even after she filed for disability benefits, ALJ did not err in discounting contrary statements by treating doctors).

D.

Finally, plaintiff argues that substantial evidence does not support the finding that she has the residual functional capacity to perform simple work and interact with supervisors, coworkers,

and the public on no more than an occasional basis. (*See* Tr. at 21). According to plaintiff, this finding is inconsistent with the testimony of Dr. Ann C. Turbeville, a medical expert, which formed the basis of a hypothetical posed to a vocational expert. (*See* Plf. MSJ Br. at 14-15).

A careful examination of the record reveals that the ALJ mischaracterized Dr. Turbeville's testimony regarding plaintiff's ability to interact with the public. At the administrative hearing, Dr. Turbeville opined:

> This is a lady who is not going to be able to work with the public, and only have incidental [contact] with her co-workers. No team work. And I would keep it fairly simple instructions so she's not required to make a lot of independent decision-making, and have supervisors come and tell her she made the wrong decision . . . She wouldn't like that.

(*Id.* at 797). In other words, Dr. Turbeville said that plaintiff was limited to performing simple work that required no interaction with the public and only incidental contact with her co-workers and supervisors. Apparently, the ALJ misunderstood this testimony because the hearing decision incorrectly states that "Dr. Turbeville [ ] opined the claimant would be unable to interact with the public/coworkers/supervisors on more than an incidental basis." (*Id.* at 22). Noting her agreement with the non-exertional mental health limitations proposed by Dr. Turbeville, the ALJ concluded that plaintiff could perform simple work, provided she was not required to interact with supervisors, coworkers, or the public on more than an occasional basis. (*Id.* at 21). The ALJ then determined that plaintiff could perform the jobs of toll collector, sorter, and cutter and paster which, according to the vocational expert, require at least "incidental" interaction with the public. (*See id.* at 24-25, 800-01, 804).

Notwithstanding the ALJ's flawed characterization of Dr. Turbeville's testimony, other medical evidence in the record supports the finding that plaintiff has the residual functional capacity

to perform simple work and interact with supervisors, coworkers, and the public on no more than an occasional basis. A residual functional capacity assessment prepared by Dr. Leela Reddy, a state agency medical consultant, rated plaintiff with only "moderate" difficulties in her ability to interact appropriately with the general public. (*See id.* at 303). In all other aspects of social functioning, Dr. Reddy found that plaintiff was "not significantly limited." (*Id.*). The restriction adopted by the ALJ is consistent with this residual functional capacity assessment and, thus, is supported by substantial evidence. *See Brown v. Astrue*, No. 3-08-CV-0255-D, 2009 WL 64117 at *4 (N.D. Tex. Jan. 12, 2009) (function-by-function RFC assessment prepared by state agency medical consultant constitutes substantial evidence); *Zeno v. Barnhart*, No. 1-03-CV-649, 2005 WL 588223 at *9 (E.D. Tex. Feb. 4, 2005) (same). Because plaintiff has not shown that the disability determination would have been different had the ALJ properly understood Dr. Turbeville's testimony, there is no prejudice. *See Dzuik v. Barnhart*, 67 Fed.Appx. 248, 2003 WL 21145745 at *1 (5th Cir. May 1, 2003) (affirming ALJ decision notwithstanding mischaracterization of medical evidence because plaintiff failed to demonstrate prejudice).

## CONCLUSION

The hearing decision is affirmed in all respects.

DATED: December 1, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE